ST. PAUL SURPLUS LINES
INSURANCE COMPANY

v.

1401 DIXON'S, INC., et al.

Civ. A. No. 83–3410.

United States District Court,
E.D. Pennsylvania.

April 9, 1984.

---

**2.** As discussed, *supra* note 1, Painters had no argument that it was not obligated to exhaust the grievance procedures of the prior contract.

Therefore, the procedural timeliness of Painters' dispute with respect to the prior contract is not determined by this Court.

Richard M. Shusterman, and Thomas J. Rueter, White & Willaims, Philadelphia, Pa., for St. Paul Surplus Lines Ins. Co.

Stacey L. Schwartz, Peruto, Ryan & Vitullo, Philadelphia, Pa., for 1401 Dixon's, Inc.

Richard P. Mislitsky, Philadelphia, Pa., for Arlene Dean Baylock.

## MEMORANDUM

GILES, District Judge.

St. Paul Surplus Lines Insurance Company, ("St. Paul"), seeks a declaratory judgment to the effect that it need not defend or indemnify its insured, 1401 Dixon's, Inc., ("Dixon's"), in a personal injury action pending in state court. St. Paul asserts that exclusions in the policy of insurance, particularly an assault and battery exclusion, relieve it of its duty to defend. In opposition, Dixon's and Arlene Dean Baylock ("Baylock") contend that the exclusions are neither factually applicable nor legally effective. Before the court is St. Paul's motion for summary judgment. For the reasons which follow, the motion shall be granted.

## I. BACKGROUND

Dixon's, doing business as 1401 Dixon's Lounge, is a tavern located in Sharon Hill, Pennsylvania. In early 1980, the co-owner of Dixon's, Mrs. Thelma Mundy, purchased a general liability insurance policy for the bar from St. Paul. The transaction was effectuated through Mrs. Mundy's broker, George Whitehair, an individual with whom she had dealt for many years. The policy covered property damage, fire loss and injury to third persons. It contained two important exclusions, one for assault and battery and one for liquor liability. The assault and battery exclusion provided:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The liquor liability exclusion denied coverage for bodily injury or property damage arising out of the sale of alcohol to minors or intoxicated individuals, or the violation of any alcohol related statutes, ordinances and regulations. The policy was renewed in early 1981, to run from February, 1981 until February 1982.

On December 5, 1981, Gaylord Dean, son of defendant Arlene Dean Baylock, was violently struck by unknown assailants in the parking lot of Dixon's Lounge. The blow allegedly resulted in severe injuries, causing Dean to lapse into a coma and eventually die. Baylock instituted suit against Dixon's and its owners in the Court of Common Pleas, Delaware County. In January of 1983, St. Paul was notified of Baylock's claim against Dixon's. St. Paul filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 (1976).

Although St. Paul's motion for summary judgment presents many issues, only two need be addressed. Dixon's argues that there is a question of fact whether Dean's injuries actually arose out of an assault and battery within the meaning of the above quoted exclusion. In addition, both

defendants contend that Dixon's co-owner, Mrs. Mundy, was not made aware of and did not understand the exclusion, thus rendering it ineffective under the rule announced in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 517, 327 A.2d 363, 365 (1974).[1]

## II. DISCUSSION

### A. *Applicability of the Exclusion*

[1, 2] St. Paul must defend its insured in the underlying state court action if the claim "potentially may become one which is within the scope of the policy ...." *Casper v. American Guarantee and Liability Ins. Co.*, 408 Pa. 426, 428, 184 A.2d 247, 248 (1962). *See also Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 589, 152 A.2d 484, 488 (1959). In determining the nature of the claim asserted, a court must look to the allegations in the complaint against the insured. *Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 594, 105 A.2d 304, 307 (1954). The court in *Wilson* explained:

> the rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action, and that the company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action
> . . . .

*Id.* (citations omitted). Therefore, in analyzing St. Paul's potential liability, the appropriate starting point is the complaint filed against Dixon's.

According to Baylock's second amended complaint, a barroom brawl erupted in Dixon's and the unknown participants therein were directed to settle their dispute outside. Second Amended Complaint at ¶¶ 6–7. Dean stumbled upon the fight, now taking place in the parking lot, and was "violently struck from behind by one of the unidentified participants" in the altercation. *Id.* at ¶¶ 8–10. The complaint characterizes the blow as an "assault" and alleges that it caused Dean's injuries and ultimate death. *Id.* at 13–14. Dixon's and its owners are accused of negligence in *inter alia*, failing to prevent or stop the fight, failing to call the police and generally failing to "maintain order in and around the premises." *Id.* at ¶¶ 15(f)–(i).

■ Although the complaint charges Dixon's with negligence, Dean's injuries were directly caused by an assault and battery—he was struck from behind. The mere fact that Dixon's may have been negligent in allowing the assault and battery to occur does not avoid the effect of the exclusion. In *Sauter v. Ross Restaurants, Inc.*, No. 80–1202 (E.D.Pa. May 21, 1981), plaintiffs were assaulted by the "bouncer" at defendant's establishment. Defendants were accused of negligence in failing to supervise their security personnel and employing personnel with violent tendencies. Summary judgment was granted in favor of the insurance company on the basis of an exclusion for injuries "arising out of assault and battery by the named insured, his employers, his agents or any independent contractors." *Sauter*, No. 80–1202, slip op. at 3. In opposing the motion, plaintiffs made the same argument championed by defendants here—negligence rather than assault and battery, was the cause of the injury. In rejecting this contention, the court explained:

> It is undoubtedly true that for plaintiffs to recover in this suit, they must demonstrate that their injuries were caused by the allegedly negligent acts. But, although the injuries must, in this sense, have been caused by Ross' negligent acts, it does not follow that these same

---

1. St. Paul also argues that Dixon's advised it of the claim in a tardy fashion, in violation of the policy provision requiring the insured to notify the company of an occurrence "as soon as practicable." This delay allegedly prejudiced St. Paul because of the intervening death of a key witness. St. Paul also asserts the liquor liability exclusion as a bar to any potential liability on its part. Defendants interpose the same arguments raised in connection with the assault and battery exclusion. However, because I conclude that the assault and battery exclusion is dispositive of St. Paul's duties under the policy, I need not reach these issues.

injuries did not "aris[e] out of assault and battery." Plaintiffs' real contention is that their injuries arose out of an assault and battery which, in its turn, arose out of Ross' negligence. Thus, plaintiffs' injuries are unambiguously excluded from coverage by the assault and battery exclusion.

*Sauter*, No. 80–1202, slip op. at 6. I find this reasoning persuasive and shall adopt it here.

The exclusion in this case, unlike the one in *Sauter*, extends beyond the actual assault and battery to cover injuries arising "out of any act or omission in connection with the prevention or suppression" of an assault and battery. This clause applies not only to the intentional tort of assault and battery, but also to negligence in failing to stop or prevent its occurrence. Therefore, the claims set forth in Baylock's complaint fall squarely within the assault and battery exclusion.

Notwithstanding the allegations in Baylock's complaint, Dixon's argues that there are factual issues surrounding how Dean's injuries were inflicted. In an effort to avoid the effect of the exclusion, Dixon's poses an alternate factual scenario, which it purportedly intends to rely upon at trial.[2] Dixon's depicts Dean as the instigator of the fight who brandished a deadly weapon and was struck by another in self-defense. In that situation, it is contended that there could be no liability for assault and battery, but only for the negligent supervision of Dixon's parking lot. I cannot agree. Dean's injuries still arose from an assault and battery, albeit his own. The controverted exclusion applies to an assault and battery committed by "any person." In order for the unknown assailant to have been justified in striking Dean,[3] Dean's actions would have had to rise to the level of an assault and battery. Thus, Dean's initial assault and battery would ultimately have led to his own injuries. If the striking of Dean was not justified, then he was the direct victim of an assault and battery. In either situation, his injuries would be the result of an assault and battery, triggering the exclusion. Finally, Dixon's argument that under some set of facts the claim would be reduced to one for negligent supervision does not obtain the desired result. A cause of action based upon negligent supervision is functionally indistinguishable from the claims of negligence found in Baylock's complaint. Liability based upon either theory will be barred by the reasoning in *Sauter* and that portion of the clause excluding injuries occasioned by the failure to stop or prevent an assault and battery. Therefore, I conclude that the claim against Dixon's does not potentially fall within the scope of the coverage of the St. Paul insurance policy.

## B. *Effectiveness of the Exclusion*

In *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), the Pennsylvania Superior Court held that in order to rely upon an exclusion in an insurance policy, the insurer must show that the insured was aware of and understood its effect. *Id.* at 517, 327 A.2d at 365. Relying upon *Hionis* and progeny, defendants argue that Mrs. Mundy's knowledge and understanding of the exclusion presents a factual issue, rendering summary judgment inappropriate. The deposition testimony of Mrs. Mundy and her broker, Mr. Whitehair, sharply conflicts relative to whether she was apprised of the exclusion.[4] Although certainly a factual

---

2. Dixon's appears to concede that if Dean was an innocent bystander or the victim of a misdirected blow, the exclusion would apply. *See* Dixon's Response to Plaintiff's Motion for Summary Judgment at 8.

3. Dixon s concedes that it is not certain it can prove that the unknown assailant could successfully invoke self-defense, *see* Dixon's Response to Plaintiff's Motion for Summary Judgment at 5, but raises this scenario as a possibility.

4. Mr. Whitehair stated that he informed Mrs. Mundy about the clause, *see* Deposition of George E. Whitehair at 20–21, 62–64. Mrs. Mundy denied any knowledge of the exclusion and stated that she would not have agreed to its inclusion in the policy. *See* Deposition of Thelma Mundy at 6–10; 20–21.

dispute, it is no longer a *material* issue of fact sufficient to defeat a motion for summary judgment. After almost ten years of litigation, the propriety of the *Hionis* rule was finally decided by the Pennsylvania Supreme Court in *Standard Venetian Blind Co. v. American Empire Ins. Co.,* —— Pa. ——, 469 A.2d 563 (1983). The Court rejected the *Hionis* rule, holding that where "the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Venetian Blind,* —— Pa. at ——, 469 A.2d 563. Thus, the relative knowledge and understanding of the insured is no longer relevant, provided that the exclusion is clear and conspicuous.[5]

■ The assault and battery exclusion contained in the St. Paul policy is clearly worded and free from ambiguity. Like the clause at issue in *Venetian,* Mrs. Mundy would have undoubtedly understood it, had she chosen to read the policy. The clause was also conspicuously displayed in the Special Provisions Endorsement, preceded by the phrase, "ASSAULT AND BATTERY EXCLUSION." Having satisfied the standard articulated in *Venetian,* the exclusion shall be enforced and St. Paul released from its duty to defend or indemnify its insured.

An appropriate order follows.

### JUDGMENT ORDER

AND NOW this 9th day of April, 1984, in accordance with the foregoing memorandum, it is hereby ORDERED that JUDGMENT is ENTERED in favor of plaintiff and against defendant. It is further ORDERED that plaintiff is not required to defend, indemnify or contribute to any judgment arising out of *Arlene Dean Baylock v. 1401 Dixon's Lounge, Inc. and James and Thelma Mundy,* No. 82–17804, presently pending in the Court of Common Pleas, Delaware County.

---

5. Although rejecting *Hionis,* the court did note that "in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance." *Venetian Blind,* —— Pa. at ——, 469 A.2d 563. The court went on to cite 13 Pa.Cons.Stat. § 2302 which involves contracts or clauses which were unconscionable when made, noting that the facts of *Venetian* did not present such a situation. *Id. Venetian* does not make it clear whether unconscionability is *the* exception to the rule or simply an example of *an* exception. In either event, there is no evidence here of unconscionability or any other factor militating against applying the general rule announced in *Venetian Blind.*