**ESSEX INSURANCE COMPANY,**
Appellee,

v.

**The FIELDHOUSE, INC., Appellant,**

and

**Wendy M. Watts, Defendant.**

**No. 93–163.**

Supreme Court of Iowa.

Oct. 20, 1993.

Thomas D. Hobart of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, for appellant.

Robert J. Blink of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

This action arises from a dispute between a liability insurer and its insured. The insurer sought a declaratory judgment that it had no obligation to defend or indemnify its insured in a personal injury action because the allegations of the plaintiff's complaint in the underlying suit fell within a policy exclusion for assault and battery. In opposition, the insured contended the exclusion was neither factually applicable nor legally effective. The district court granted the insurer's motion for summary judgment on the basis of the exclusion, finding no duty to defend or indemnify. We affirm.

I. *Background.*

On September 10, 1988, Essex Insurance Company (Essex) issued a comprehensive general liability insurance policy to The Fieldhouse, Inc., d/b/a Fieldhouse and Mark J. Eggleston ATIMA (Fieldhouse), a restaurant and lounge in Iowa City. The original policy period ran from September 10, 1988, to September 10, 1989. Thereafter, the policy was renewed for successive periods including 1991. The language in the policy giving rise to Essex's duties provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

An "occurrence" under the policy is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[1]

The declarations page of the original policy listed the form numbers of the attached endorsements. A Special Provisions Endorsement listed eight exclusions which were applicable if checked. Three boxes on the page were checked including the one labeled Assault and Battery Exclusion. This exclusion provided:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The renewal certificate for the period from September 10, 1991, to September 10, 1992, incorporated by reference a Combined Provisions Endorsement which included an exclusion labeled Assault and Battery/Hiring Supervision. This exclusion provided:

It is agreed this policy does not cover any claims arising out of Assault and Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the Insured, Insured's employees, patrons or any other person. Further, claims, accusations or charges of negligent hiring, placement,

training or supervision arising from any of the foregoing are not covered.

Neither of the endorsements were signed.

The background of this suit began with a dispute at the Fieldhouse on October 13, 1991, involving two patrons, Wendy M. Watts and Sarah E. Hoff. A verbal altercation erupted into action and Hoff struck Watts in the face with a glass beer pitcher causing serious facial lacerations. Employees of the Fieldhouse intervened and called the police. Hoff later pleaded guilty to assault with a deadly weapon in violation of Iowa Code sections 708.1, 708.2(3) (1991).

Watts then filed an action against the Fieldhouse seeking damages for personal injuries under two theories: dramshop liability and negligence. The Fieldhouse contacted its liability insurer, Essex, and tendered defense of the negligence claims. The Fieldhouse made no claim that Essex had any duty to defend or indemnify the dramshop claim. The Essex insurance policy expressly excluded dramshop coverage and the Fieldhouse had secured dramshop insurance from another insurance carrier.

Essex denied the tender of defense citing the Assault and Battery Exclusion in its policy. Essex then filed a petition for declaratory judgment seeking a determination that Watts' injuries were not caused by an occurrence within the meaning of the policy and that the policy's assault and battery exclusion precluded coverage for defense or indemnity for claims arising from the underlying action. In its answer, the Fieldhouse asserted that the incident was an occurrence under the policy, that the complaint was not premised upon an assault or battery but instead was based on negligence, and further asserted that the doctrine of reasonable expectations applied.

Subsequently, Essex moved for summary judgment. In granting Essex's motion, the district court found the underlying negligence claims arose out of an assault and battery. The court held that Essex had no duty to defend or indemnify the Fieldhouse

---

1. We recently construed this definition. *See West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.,* 503 N.W.2d 596, 600–01 (Iowa 1993).

because the allegations of Watts' complaint fell within the policy exclusion. The court further held the doctrine of reasonable expectations did not apply because the policy language was unambiguous. It is from this ruling and judgment that the Fieldhouse now appeals.

## II. *Standard of Review.*

 We have held declaratory relief is appropriate to negate a duty to defend or indemnify. *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984). An insurer's "duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case...." *Id.* at 119. *See also West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 601 (Iowa 1993).

On appeal of a summary judgment ruling, we review the entire record to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fees v. Mutual Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992); Iowa R.Civ.P. 237(c). "No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts." *Ottumwa Hous. Auth. v. State Farm Fire & Casualty Co.*, 495 N.W.2d 723, 726 (Iowa 1993). The focus of this appeal is the applicability of the assault and battery exclusion and the effectiveness of this exclusion.

The construction and interpretation of an insurance policy are questions of law for the court. *A.Y. McDonald Indus. v. INA*, 475 N.W.2d 607, 618 (Iowa 1991). "In the construction of insurance policies, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *Id.* at 618. With these principles in mind, we turn now to the disputed policy provisions. Assuming, without deciding, the assault was an "occurrence" within the meaning of the policy, we believe the controlling issue is whether the policy exclusion in this case is a complete defense.

## III. *Assault and Battery Exclusion.*

 The Fieldhouse contends Watts' petition raises some allegations of negligence which are not excluded by the assault and battery provision, thus Essex's duty to defend must necessarily attach. *See McAndrews*, 349 N.W.2d at 119 (duty to defend arises when the totality of facts disclose potential coverage). In analyzing Essex's potential duty to defend, which is broader than the duty to indemnify, the appropriate starting point is the allegations contained in the petition filed by Watts against the Fieldhouse. *West Bend Mut.*, 503 N.W.2d at 601; *McAndrews*, 349 N.W.2d at 119. In her petition, Watts raises claims of negligent hiring, training, and supervision of its employees, negligent admission of Hoff to the premises, failure to maintain safe premises, and negligent use of glass beer pitchers.

We have not previously examined an assault and battery provision which purports to exclude negligent acts as well as intentional acts irrespective of who caused or directed the acts or omissions. *See Altena v. United Fire & Casualty Co.*, 422 N.W.2d 485, 490 (Iowa 1988) (intentional act exclusion precluded coverage for sexual abuse by the insured); *McAndrews*, 349 N.W.2d at 119–20 (intentional act exclusion bars coverage even if insured's act is in self-defense).

 The Fieldhouse's principal argument is that Watts' claims are based on negligence rather than on an assault and battery. To be sure Watts' injuries may have been caused by the Fieldhouse's negligent acts, but it does not follow that these injuries did not "arise out of" the assault and battery. We believe Watts' real contention is that her injuries arose out of an assault which, in turn, arose out of the Fieldhouse's negligence. *See, e.g., St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.*, 582 F.Supp. 865, 867–68 (E.D.Pa.1984).

Regardless of the label, be it negligence or intentional tort, it is clear Watts is seeking damages for injuries sustained when she was assaulted by another patron at the Fieldhouse. In our review of the allegations made by Watts we examine the substance, as opposed to the form, of the claim.

Although we require a narrow or restrictive construction of exclusion clauses in insurance policies, the claims against the Fieldhouse are clearly causally connected to the assault, thus triggering the exclusion. *See Grinnell Mut. Reinsurance Co. v. Employer's Mut. Casualty Co.*, 494 N.W.2d 690, 693 (Iowa 1993); *Kalell v. Mutual Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867–68 (Iowa 1991). This exclusion extends beyond the actual assault to preclude an entire class of risks arising out of an assault or battery. Further, the 1991 endorsement added a second clause that explicitly bars coverage for "charges of negligent hiring, placement, training or supervision" if they arise from an assault and battery. We conclude the claims set forth in Watts' complaint fall squarely within the Assault and Battery Exclusion of the Essex policy.

Our conclusion is consistent with the overwhelming weight of authority in jurisdictions that have interpreted substantially similar assault and battery exclusions involving assault and battery committed by a third party. *See Essex Ins. Co. v. Yi*, 795 F.Supp. 319, 323–24 (N.D.Cal.1992); *Stiglich v. Tracks, D.C., Inc.*, 721 F.Supp. 1386, 1387 (D.D.C. 1989); *St. Paul Surplus Lines*, 582 F.Supp. at 868–69; *Gregory v. Western World Ins. Co., Inc.*, 481 So.2d 878, 881 (Ala.1985); *Kelly v. Figueiredo*, 223 Conn. 31, 610 A.2d 1296, 1299 (1992); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So.2d 965 (Fla.Dist.Ct.App. 1991); *Hernandez v. First Fin. Ins. Co.*, 106 Nev. 900, 802 P.2d 1278, 1280 (1990).

Moreover, several courts have held that the "arising out of" language of the assault and battery exclusion also precluded coverage for claims based on negligent hiring, training and supervision even where the policy did not include a separate hiring and supervision clause. *See, e.g., St. Paul Surplus Lines*, 582 F.Supp. at 868; *Hernandez*, 106 Nev. at 902, 802 P.2d at 1280. A lone federal court found potential coverage under such an exclusion. *See Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1226 (3d Cir.1989). By contrast, the plaintiff in the *Terra Nova* case raised claims involving the improper use of a firearm which were dis-

tinct and severable from the assault and battery claim. *Id.*

■ In addition to the applicability of the exclusion, the Fieldhouse also raises several questions concerning the effectiveness of the exclusion. First, it argues the terms of the assault and battery exclusion are ambiguous and as such the policy should be construed in favor of the insured. *See A.Y. McDonald*, 475 N.W.2d at 619. "Ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Id.* at 618. Although parties may disagree as to the meaning of terms, this does not automatically establish an ambiguity. *Id.* at 619. The test is whether the language is "fairly susceptible to two interpretations." *Id.* Also, we have held that when an exclusion acts to withdraw a promised coverage, it must be clearly and explicitly defined. *Id.; see also Clark–Peterson Co., Inc. v. Independent Ins. Assoc., Ltd.*, 492 N.W.2d 675, 679 (Iowa 1992). At the same time clear and unambiguous exclusions must be given effect; liability should not be imposed that was neither intended nor purchased. *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 294 (Iowa 1990); *Gateway State Bank v. North River Ins. Co.*, 387 N.W.2d 344, 346 (Iowa 1986). We find the terms of the assault and battery exclusion could not be clearer; the plain language dictates a finding of no coverage for Watts' claims against the Fieldhouse.

■ Next, the Fieldhouse contends the exclusion relied on by Essex is ineffective because it was buried at the back of the policy, it was not brought to its attention, and the endorsement forms were unsigned. For the following reasons, these contentions fail. In general, an insurance contract includes the policy form along with the declarations and endorsements. *See* 13A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 7537, at 140 (1976). To be effective, an endorsement must be made a part of the policy and incorporated by reference. *Id.* § 7538, at 163. We have stated an exclusion "need not be a part of the insuring clause; it is enough if it is clearly delimited

at another point in the policy." *Mallinger v. State Farm Mut. Auto. Ins. Co.*, 253 Iowa 222, 227, 111 N.W.2d 647, 649 (1961).

 Here, the original Essex policy included an assault and battery exclusion set forth on a form labeled Special Provisions Endorsement. All included endorsements were listed on the declarations page of the policy. We find the endorsements were clearly referenced and effectively incorporated into the policy.

Likewise, the renewal certificate for 1991 clearly set forth and incorporated by reference the Combined Provisions Endorsement containing the modified Assault and Battery/Hiring Supervision Exclusion. Notably, this was the third liability policy between these parties and the modified exclusion was so substantially similar to the original one that it added little to the breadth of the exclusion. It too contained a Liquor Liability Exclusion.

Contrary to the Fieldhouse's argument, we find that an unsigned policy endorsement does not render it ineffective. If an

> endorsement is physically attached to an insurance policy contemporaneous with its execution, and is delivered to the insured as attached, and sufficient reference is made in either the policy or the attached matter to identify the papers as related, the fact that the matter so attached is without the signature of the insurer or its authorized agents will not preclude its inclusion and construction as a part of the insurance contract.

13A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 7538, at 163–64 (1976). Having found the exclusion in both policies effectively incorporated, clearly worded and conspicuously displayed, it must be enforced.

IV. *Reasonable Expectations Doctrine.*

Finally, the Fieldhouse argues that coverage under this policy for the alleged negligent acts should be found in accordance with the reasonable expectations of parties. The doctrine of reasonable expectations "can only be invoked where an exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Clark–Peterson Co.*, 492 N.W.2d at 677 (citation omitted).

Before we consider these criteria, however, we must find either that the policy is "such that an ordinary layperson would misunderstand its coverage, or there must be circumstances attributable to the insurer which would foster coverage expectations." *Id.* To repeat, we find that a layperson reading the exclusion would have undoubtedly understood its meaning. Further, there is simply no evidence in this record of underlying policy negotiations or other circumstances from which we can conclude that the Fieldhouse could reasonably have expected coverage for claims arising out of an assault and battery. The Fieldhouse merely makes a general assertion that it expected a liability policy to cover such negligent acts. We therefore decline to apply the reasonable expectations doctrine.

Essex is entitled to summary judgment; the assault and battery exclusion releases it from any obligation to defend or indemnify the Fieldhouse in the underlying action. The district court properly granted summary judgment.

**AFFIRMED.**