971 F.2d 438
 ALL AMERICAN INSURANCE CO., Plaintiff,
v.
David L. BURNS; James O. Wilde, individually and as father
and next friend of Jamie Janice Wilde; Larry Erbe,
individually and as father and next friend of Brandy Erbe, a
minor; First Assembly of God Church, Inc., an Oklahoma
corporation; George Denny, Defendants,
Leroy Hall, Defendant-Cross-Claimant-Appellant.
and
Floyd MARTIN and Ralph Morgan, Defendants-Appellants,
v.
PREFERRED RISK MUTUAL INSURANCE COMPANY,
Defendant-Cross-Claim Defendant-Appellee.
 Nos. 87-1202, 87-1321.
 United States Court of Appeals,
Tenth Circuit.
 May 4, 1992.
 
 Joseph F. Clark, Jr. (Roger R. Williams, with him, on the brief), Williams, Clark, Baker, Howard & Earl, P.A., Tulsa, Okl., for defendants-appellants Floyd Martin and Ralph Morgan.
 Walter D. Haskins, of Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, Okl. (Renee J. Harter, on the brief), for defendant-cross-claimant-appellant Leroy Hall.
 John H. Tucker, of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl., for defendant-cross-claim defendant-appellee Preferred Risk Mut. Ins. Co.
 Before McKAY, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment granting declaratory relief for defendant-appellee Preferred Risk Mutual Insurance Company (Preferred Risk). The judgment determined that there was no duty to defend or indemnify several named insured parties. We feel there is one primary dispositive issue--whether the circumstances of the case were within an exclusion in Preferred Risk's policy for "personal injury arising out of the willful violation of a penal statute ... committed by or with knowledge of [sic] consent of any insured." The district judge held that due to the convictions of a volunteer driver of the insured church's bus on his pleas of guilty to charges of molestation of two girls, the exclusion applied. We agree and accordingly affirm.
 
 
 2
 * In June and July 1984, David L. Burns, then a volunteer bus driver for the First Assembly of God Church, Inc., molested and sexually assaulted Jamie Wilde and Brandy Erbe. I R.Doc. 43, at 2; Brief of Appellants at 3; see I R.Doc. 21, Exs. C and E. Burns subsequently was charged in an Oklahoma state district court on two counts of lewd molestation in violation of title 21, section 1123 A(2) of the Oklahoma Statutes. In May 1985, Burns pled guilty to both counts and was sentenced to 20 years' imprisonment with 10 years on each count suspended. The appellants acknowledge that the acts of molestation were committed by Burns on children he was transporting, although they argue that "[i]n committing the criminal acts of lewd molestation upon the children he was transporting, [Burns] was not acting within the scope of his duties as a volunteer bus driver for the church." Brief of Appellants at 11.
 
 
 3
 In May 1985, civil suits were filed in the state district court for Tulsa County, Oklahoma, by the fathers of the victims, individually and as next friends of their daughters. The suits named as defendants Burns, First Assembly, and several members of the board of directors of First Assembly. The civil actions sought damages from First Assembly and its directors, alleging that they negligently failed to investigate Burns' background or record, and that they were negligent in failing to discharge Burns on learning of his allegedly aberrant behavior. I R.Doc. 21, Exs. A and B.
 
 
 4
 All American Insurance Company (All American) had a homeowners insurance policy in force with Burns. Burns demanded that All American provide him with a defense in the damage actions as well as indemnification for any liability incurred by him. Brief of Appellants at 4. In August 1985 All American filed a declaratory judgment suit in the United States District Court for the Northern District of Oklahoma seeking a determination that All American owed no duty to defend or indemnify with respect to the state court suits. In the declaratory action, All American relied on a policy provision excluding coverage for intentional acts. The district court found that the exclusion applied, and All American's motion for summary judgment was granted in a judgment separate from that for Preferred Risk. I R.Doc. 47. The ruling for All American was not appealed.
 
 
 5
 One named defendant in the declaratory judgment action, Leroy Hall, cross-claimed against Preferred Risk alleging that Preferred Risk was obligated to defend and indemnify Hall respecting the state court negligence actions. Preferred Risk denied any obligation to defend or indemnify Hall and itself moved for summary judgment of nonliability to defend or indemnify.
 
 
 6
 The district court granted Preferred Risk's motion for summary judgment. I R.Doc. 43. The judge's order stated that he had for consideration the motion of Preferred Risk for summary judgment, the motion for summary judgment of defendant Hall, and the motion for summary judgment of defendants Erbe and Wilde, individually and as next friends of their daughters, the victims. All of the motions asked the court to render a declaratory judgment concerning the liability of Preferred Risk to indemnify and defend First Assembly, Hall, Morgan, and Martin against the negligence claims asserted against them by Erbe and Wilde in the Tulsa County district court actions.
 
 
 7
 In its ruling, the court found that these basic facts were undisputed. Preferred Risk had issued a comprehensive liability policy in January 1984, insuring First Assembly against liability for personal injury and property damage. During June and July 1984, "while serving as the driver of a church vehicle" for First Assembly, Burns sexually molested Wilde and Erbe. I R.Doc. 43, at 2. Subsequently, in May 1985, Burns was convicted of lewd molestation arising out of these acts. The fathers of the girls brought the state court actions alleging, inter alia, that First Assembly and other defendants negligently failed to investigate Burns' background and record.
 
 
 8
 The court concluded that there was no factual dispute regarding the terms of the policy issued by Preferred Risk to First Assembly. In the "Comprehensive Liability" portion of the policy, Section II, "insured" is defined, in part, as follows:
 
 
 9
 If the named insured is a religious or educational institution, each of the following is an insured:
 
 
 10
 (a) any clergyman, councilman, deacon, elder, employee, executive officer, member of the Board of Education, Board of Governors or Board of Trustees, Sunday school superintendant, Sunday school teacher, vestryman, warden, volunteer who is duly appointed or elected; but only while acting in the scope of his duty as such in relation to the named insured;
 
 
 11
 (b) any church organization authorized or controlled by the named insured; and
 
 
 12
 (c) any other member of the named insured, if the named insured is unincorporated, who is duly appointed or elected, but only while acting in the scope of his authority as such in relation to the named insured.
 
 
 13
 I R.Doc. 36, Attach. at 2 of 7.
 
 
 14
 Further, the district judge noted that the policy contains an exclusion in the "Comprehensive Liability" section stating:
 
 
 15
 Under this coverage, this policy does not apply:
 
 
 16
 ....
 
 
 17
 (m) to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with knowledge of [sic] consent of any insured;
 
 
 18
 Id. at 5 of 7.
 
 
 19
 Recognizing that a court must liberally construe the insurance contract in favor of the objects to be accomplished, Catts Co. v. Gulf Ins. Co., 723 F.2d 1494, 1500-01 (10th Cir.1983); Dayton Hudson Corp. v. American Mut. Liab. Ins. Co., 621 P.2d 1155, 1158 (Okla.1980), the court here nevertheless concluded that:
 
 
 20
 The exclusion in the policy for criminal acts clearly states that it does not cover damages for personal injury arising out of the willful violation of a penal statute which was committed by an insured or committed with the consent of an insured. This clause clearly excludes all damages caused by criminal violations from coverage under the policy. Although Defendants Hall, Martin and Morgan have only negligence claims asserted against them, the personal injuries for which these claims are asserted arose out of the willful violation of a penal statute committed by an insured. The fact that these Defendants were "upstream" in the chain of causation, does not bring them within the terms of the policy.
 
 
 21
 IT IS THEREFORE ORDERED that the motion for summary judgment of Defendant Preferred Risk Mutual Insurance Company is hereby granted, and the motions for summary judgment of Defendant Hall, Erbe, and Wilde are denied, and a declaratory judgment is rendered that Preferred Risk Mutual Insurance Company has no duty to indemnify or defend Leroy Hall under the terms of the policy issued to the First Assembly of God Church.
 
 
 22
 I R.Doc. 43, at 5. These appeals followed.
 
 II
 
 23
 We focus on the dispositive holding of the district judge that Preferred Risk was entitled to summary judgment on the basis that the policy excluded coverage for the willful violation of a penal statute by, or with the knowledge or consent of, any insured.
 
 
 24
 In our record are the First Amended Petitions filed in state court by the fathers of the two girls. They allege: negligence by First Assembly and Martin, Morgan, Denny, and Hall in failing to investigate the background habits and the record of Burns; that the defendants became aware of Burns' aberrant behavior but failed to terminate his employment; and that Burns molested and sexually annoyed each girl. I R.Doc. 21, Exs. A and B. Further, the record contains the state court preliminary informations filed against Burns alleging lewd molestation of the girls, who were both under 16 years of age. The informations charged that the offenses were committed by Burns "unlawfully, feloneously, intentionally, designedly and knowingly." Id. at Exs. C and E. The judgment and sentence on the pleas of guilty in each criminal case appears in our record, Burns being sentenced to 20 years' imprisonment, including 10 years of imprisonment and 10 years being suspended on each charge. Id. at Exs. D and F. There are thus more than mere allegations of intentional acts of willful violations of penal statutes--there is conclusive proof thereof by guilty pleas and criminal convictions on both such charges.
 
 
 25
 The question comes down to whether the allegations of negligence respecting the employment of Burns and the failure to discharge him after First Assembly and other defendants became aware of Burns' aberrant behavior are alone controlling. If the state court actions are viewed as solely a type of "negligent entrustment" case, may the remaining allegations of the state court suits be disregarded? As noted earlier, in addition to the allegations of negligence concerning the employment of Burns, the petitions also alleged that Burns "did molest and sexually annoy" the young girls, and that "as a result of the negligence of the Defendants and each of them and the acts of ... Burns, [the girls] suffered injuries of mind and body, which injuries are permanent in nature and have required medical attention." I R.Doc. 21, Exs. A and B (emphasis added).
 
 
 26
 We cannot agree with the appellants' argument that the cases can be viewed as involving only the negligence allegations and the negligent entrustment theory. It is, instead, an essential element of the state court causes of action that Burns molested the girls and caused them injuries of mind and body. "A cause of action for negligence depends not only upon the defendant's breach of duty to exercise care to avoid injury to the plaintiff, but also upon damage or injury suffered by the plaintiff as a consequence of the violation of duty." 57A Am.Jur.2d Negligence § 142, at 202-03 (1989) (footnotes omitted). The sexual violations and resulting injuries cannot therefore be disregarded. And giving consideration to them, the exclusion in the policy is thus applicable providing that the policy does not apply "to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with knowledge of [sic] consent of any insured." I R.Doc. 36, Attach. at 5 of 7.
 
 
 27
 We are mindful that Oklahoma follows the familiar principles that when an insurance contract is susceptible of two meanings, the words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer. Dayton Hudson Corp., 621 P.2d at 1158. Nevertheless, in light of the clear and unambiguous exclusion here, we are persuaded that the district judge was correct in holding that the Oklahoma courts would reach this result in accord with the apparent majority of other courts deciding similar questions.
 
 
 28
 In Fidelity & Guaranty Insurance Underwriters v. McManus, 633 S.W.2d 787 (Tex.1982), a similar issue was presented involving an exclusion for the use, loading, or unloading of any recreational motor vehicle owned by an insured. Id. at 788. The jury found that a trail bike loaned to a friend of the insured and the borrower collided with a second bike. A damage action was brought against the owner of the trail bike who loaned it, alleging negligent entrustment. The insurance company pled an exclusion on use of a recreational motor vehicle away from the resident premises. Its position was upheld by the Supreme Court of Texas. The Texas Court recognized cases holding that negligent entrustment is a distinct and specific cause of action with liability founded on the act of negligent entrustment, rather than "use" of the vehicle, apparently the minority view. See id. at 789 & n. 1 and cases cited.
 
 
 29
 The apparent majority view, however, id. at 789 n. 2, recognizes that while discrete negligence is a part of a claim of negligent entrustment, the complete cause of action requires proof of the additional element, such as the recreational vehicle's use, bringing into play the exclusion. The Texas Court explained:
 
 
 30
 Essential to recovery, therefore, is negligent entrustment by the owner or custodian of the instrumentality, plus its negligent operation or use by the entrustee. Whether the entrustment is to an insured or non-insured, the plaintiff must still show negligent operation or use by the entrustee as an element of the cause of action. In other words, there would have been no accident in this case without the negligent operation or use of a recreational motor vehicle. See Cooter v. State Farm Fire & Cas. Co., 344 So.2d 496, 497 (Ala.1977). The homeowner's policy excludes coverage for claims arising out of the ownership, use, or operation of a recreational motor vehicle. Fidelity is under no duty to defend McManus under facts excluded from coverage under the policy. See Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 24-25 (Tex.1965).
 
 
 31
 Fidelity & Guar. Ins. Underwriters v. McManus, 633 S.W.2d at 790 (emphasis added).
 
 
 32
 We are persuaded that the reasoning of the Texas court and the apparent majority of cases on this issue would be applied in Oklahoma to the instant case.[1] The petitions here would not have stated the complete causes of action without alleging the molestation and resulting injuries. Thus the penal violation exclusion logically and necessarily applies.
 
 
 33
 In Allstate Insurance Co. v. Thomas, 684 F.Supp. 1056 (W.D.Okla.1988), Oklahoma law was applied in connection with an exclusion in a homeowner's policy for bodily injury or property damage intentionally caused by an insured. The acts in question were akin to those of the instant case, a bus driver molesting a child at a church property. While negligent entrustment analysis was not involved, we note that the district court did hold that the sexual molestation circumstances established an intentional act within the exclusion in the policy, and denied coverage.
 
 
 34
 The McManus opinion of the Texas Supreme Court, 633 S.W.2d at 789 n. 2, notes as within the minority view the opinion of this court in Douglass v. Hartford Ins. Co., 602 F.2d 934 (10th Cir.1979), which was a diversity case applying Colorado law. See Milbank Ins. Co. v. Garcia, 779 F.2d 1446 (10th Cir.1985) (following Douglass' interpretation of Colorado law).[2] We must, of course, carefully consider these opinions of this court which our panel cannot disregard. We are convinced that Douglass is not controlling here for these reasons. First, Douglass found that the recreational vehicle exclusion there, and its provisions that the policy did not apply to ownership, maintenance, etc., of a recreational motor vehicle, were not plain and free from ambiguity since the courts were divided on their interpretation. Douglass, 602 F.2d at 938. Here, we are persuaded that the Preferred Risk exclusion as to "personal injury arising out of the willful violation of a penal statute committed by or with knowledge of [sic] consent of any insured," is clear and unambiguous, and plainly applicable on the conclusive record of such offenses here. Second, Douglass was making an application of Colorado law and under our former practice[3] properly gave "substantial weight" to the resident district judge's view on the law of Colorado. Id. (quoting Glenn Justice Mortgage Co. v. First Nat'l Bank, 592 F.2d 567, 571 (10th Cir.1979)). Third, Douglass considered persuasive a Colorado state district court ruling on identical facts, which decision likewise held that exclusion inapplicable.
 
 
 35
 Moreover, we note that since Douglass and Milbank Insurance Co., the Supreme Court of Colorado has itself applied reasoning similar to that we have followed in the instant case. In Northern Insurance Co. of New York v. Ekstrom, 784 P.2d 320, 323 (Colo.1989), the Court held that coverage did not apply to a negligent entrustment claim where a general liability policy contained an exclusion of liability for injuries arising out of the ownership, operation and use of an automobile. The Court stated that:
 
 
 36
 Since one element of a negligent entrustment claim must be the negligent use of an automobile, a claim for negligent entrustment of an automobile inextricably derives from or relates to the use, ownership or operation of an automobile, and the automobile exclusion is therefore unambiguous in this context. E.g., Barnstable Mutual Fire Ins. Co. v. Lally, 374 Mass. 602, 605, 373 N.E.2d 966, 969 (1978).
 
 
 37
 724 P.2d at 323.
 
 
 38
 We are convinced that here the Oklahoma court would likewise view the damage suit petitions as a whole, including the element of the molestations and resulting injuries, which bring into play the penal act exception. The charges of molestation are an essential element of the plaintiffs' claims in the state court here. Moreover, the fact of the penal violations by Burns is conclusively proven in our record, which contains the criminal informations and the judgments and sentences on his pleas of guilty. In these circumstances, we are persuaded that the district judge properly determined Oklahoma law in applying the clear and unambiguous exclusion.
 
 III
 
 39
 We turn now to the remaining contentions of the defendants-appellants.
 
 
 40
 The defendants also argue, as Morgan and Martin did below, I R.Doc. 31, at 2-3: that they are additional insureds owed independently duties of defense and indemnity by Preferred Risk; and that the criminal act of a third party should not destroy their rights. We disagree. The exclusion is clear and unambiguous. The coverage in question under "this policy does not apply ... to personal injury arising out of the willful violation of a penal statute ... committed by or with knowledge of [sic] consent of any insured." I R.Doc. 36, Attach. at 5 of 7 (emphasis added).
 
 
 41
 Furthermore, defendant Hall argues that under the Dayton Hudson opinion, when recovery is sought based on Hall's prior knowledge of Burns' propensity to commit a wrongful act, "the basis of liability invoked is not respondeat superior, but rather the employer's own negligence in not discharging the unfit servant." 621 P.2d at 1161. Accepting fully the Dayton Hudson ruling, we are not persuaded that it shows that the exclusion in question here should not be applied. Dayton Hudson involved no such exclusion; it dealt with the question of whether an employer's own negligence in not discharging an unfit servant is a case in which insurance coverage should not be permitted to protect against the employer's liability for punitive damages to the insurer. Id. at 1161. We find no support in the opinion for Hall's claim of error.
 
 
 42
 The appellants argue further that the district judge erred in finding that Burns was an "insured" under the policy since his criminal acts were not within the scope of his duties with the church. Then the further argument is that since Burns was not an "insured," the exclusion from coverage for injury arising out of willful violation of a penal statute by "an insured" does not apply and the appellants should have coverage. Appellants cite three Oklahoma cases dealing with scope of employment in the general area of liability of a master for a servant or agent, Allison v. Gilmore, Gardner & Kirk, Inc., 350 P.2d 287 (Okla.1960); Hill v. McQueen, 204 Okl. 394, 230 P.2d 483 (1951); and Dill v. Rader, 533 P.2d 650 (Okla.Ct.App.1975), inter alia. Brief of Appellants at 10-12.
 
 
 43
 Preferred Risk responds that the appellants confuse respondeat superior, which is a vicarious liability concept, with an insurance question. We agree. The issue before us is whether the exclusion from the policy's coverage of "personal injury arising out of the willful violation of a penal statute ... committed by ... any insured" applied. We are convinced that we should consider specifically whether Burns was an "insured" under Section II, paragraph 3(e), dealing with a named insured which is a religious or educational institution. In such a case additional insureds are listed: "any clergyman, councilman, deacon, elder, employee ... [or] volunteer who is duly appointed or elected; but only while acting in the scope of his duty as such in relation to the named insured." We are persuaded by Preferred Risk's argument that Burns' criminal acts occurred while he was performing the very task he was directed by the church to perform. This interpretation gives effect to the "plain, ordinary and popular" meaning of the scope of duty clause in the policy. Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla.1974); see Aetna Casualty & Sur. Co. v. Shuler, 72 A.D.2d 591, 421 N.Y.S.2d 87, 88 (1979) (shooting of plaintiff by corporate officer as managing agent was within officer's course of duties and within intentional tort exclusion of insurance coverage; insured corporation not entitled to indemnity).
 
 
 44
 We should not go further to nullify the penal violation exclusion by incorporating the respondeat superior tests and holding that a servant at the time of an assault was not acting within the scope of his employment. See Allison v. Gilmore, Gardner & Kirk, Inc., 350 P.2d at 287 (Syllabus 1 of Court). If the respondeat superior tests are used, an anomalous result would follow. The more heinous the employee's acts become, the more certain it would be that the penal violation exclusion would not apply.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 As noted, the majority view is in accord with the Texas opinion in Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus, 633 S.W.2d at 789 n. 2 and cases cited. See also Standard Mut. Ins. Co. v. Bailey, 868 F.2d 893, 898, 901 (7th Cir.1989) (predicting Indiana law); Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co., 821 F.2d 671, 676-77 (D.C.Cir.1987) (predicting Maryland law); Allstate Ins. Co. v. Ellison, 757 F.2d 1042, 1045 (9th Cir.1985) (predicting Alaskan law); Cooter v. State Farm Fire & Casualty Co., 344 So.2d 496, 497-98 (Ala.1977); Lumbermens Mut. Cas. Co. v. Kosies, 124 Ariz. 136, 138, 602 P.2d 517, 519 (App.1979); Aetna Casualty & Sur. Co. v. American Mfrs. Mut. Ins. Co., 261 Ark. 326, 547 S.W.2d 757, 758 (1977); Safeco Ins. Co. v. Gilstrap, 141 Cal.App.3d 524, 190 Cal.Rptr. 425, 429-30 (1983); Insurance Co. of N. Am. v. Waterhouse, 424 A.2d 675, 680-83 (Del.Super.Ct.1980); Gargano v. Liberty Mut. Ins. Co., 384 So.2d 220, 221 (Fla.Dist.Ct.App.1980); Grange Mut. Casualty Co. v. King, 174 Ga.App. 716, 331 S.E.2d 41, 43-44 (1985); Hawaiian Ins. & Guar. Co. v. Chief Clerk, 68 Haw. 336, 713 P.2d 427, 430-31 (1986); Louis Marsch, Inc. v. Pekin Ins. Co., 140 Ill.App.3d 1079, 96 Ill.Dec. 386, 391, 491 N.E.2d 432, 437 (1985); Picou v. Ferrara, 412 So.2d 1297, 1300 (La.1982); American Universal Ins. Co. v. Cummings, 475 A.2d 1136, 1137-38 (Me.1984); Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 373 N.E.2d 966, 968-69 (1978); Michigan Mut. Ins. Co. v. Sunstrum, 111 Mich.App. 98, 315 N.W.2d 154, 157-58 (1981) (per curiam); Fillmore v. Iowa Nat'l Mut. Ins. Co., 344 N.W.2d 875, 878, 881 (Minn.Ct.App.1984); Shelter Mut. Ins. Co. v. Politte, 663 S.W.2d 777, 779-80 (Mo.Ct.App.1983); Senteney v. Fire Ins. Exch., 101 Nev. 654, 707 P.2d 1149, 1151 (1985) (per curiam); Hanover Ins. Co. v. Grondin, 119 N.H. 394, 402 A.2d 174, 177-78 (1979); Williamson v. Continental Casualty Co., 201 N.J.Super. 95, 492 A.2d 1028, 1033-34 (App.Div.1985); Ruggerio v. Aetna Life & Casualty Co., 107 A.D.2d 744, 484 N.Y.S.2d 106, 106-07 (1985); Farmers Ins. Group v. Nelsen, 78 Or.App. 213, 715 P.2d 492, 494-95, review denied, 301 Or. 241, 720 P.2d 1280 (1986); Erie Ins. Exch. v. Transamerica Ins. Co., 352 Pa.Super. 78, 507 A.2d 389, 393-97 (1986); Great Cent. Ins. Co. v. Roemmich, 291 N.W.2d 772, 775 (S.D.1980); Farmers Ins. Co. v. Hembree, 54 Wash.App. 195, 773 P.2d 105, 109, review denied, 113 Wash.2d 1011, 779 P.2d 729 (1989) (exclusion of claims for bodily injury arising as result of intentional acts of an insured barred coverage for parents of boys who sexually assaulted children being cared for in parents' home; allegations of negligent supervision by parents did not avoid exclusion); Bankert v. Threshermen's Mut. Ins. Co., 105 Wis.2d 438, 313 N.W.2d 854, 856-57 (1981), aff'd, 110 Wis.2d 469, 329 N.W.2d 150 (1983)
 
 
 [2]
 For decisions expressing the view that negligent entrustment is a separate and distinct cause of action, see, e.g., Douglass v. Hartford Ins. Co., 602 F.2d 934, 937-38 (10th Cir.1979) (predicting Colorado law); Upland Mut. Ins. Co. v. Noel, 214 Kan. 145, 519 P.2d 737, 741-42 (1974); Shelby Mut. Ins. Co. v. United States Fire Ins. Co., 12 Mich.App. 145, 162 N.W.2d 676, 678 (1968); Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 204 N.W.2d 426, 429-30 (1973); McDonald v. Home Ins. Co., 97 N.J.Super. 501, 235 A.2d 480, 482 (Ct.App.Div.1967); Lalomia v. Bankers & Shippers Ins. Co., 35 A.D.2d 114, 312 N.Y.S.2d 1018, 1021 (1970), aff'd, 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (N.Y.1972); Huggins v. Tri-County Bonding Co., 175 W.Va. 643, 648, 337 S.E.2d 12, 17 (1985)
 
 
 [3]
 We now must review a federal district judge's holding de novo, although his or her views are expressed on the law of the state in which he or she resides. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)