USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2068 WINNACUNNET COOPERATIVE SCHOOL DISTRICT, Plaintiff, Appellant, v. NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA, Defendant, Appellee. ____________________ No. 95-2069 SCHOOL ADMINISTRATIVE UNIT #21, Plaintiff, Appellant, v. NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA, Defendant, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________ ____________________ Before Selya, Stahl, and Lynch, Circuit Judges. ______________ ____________________ Robert A. Casassa with whom Casassa and Ryan was on brief for __________________ ________________ appellants. Gordon A. Rehnborg with whom Doreen F. Connor and Wiggin & Nourie __________________ ________________ _______________ PA were on brief for appellee. __ ____________________ May 23, 1996 ____________________ STAHL, Circuit Judge. Plaintiff-appellants STAHL, Circuit Judge. _____________ Winnacunnet Cooperative School District ("Winnacunnet") and School Administrative Unit #21 ("SAU #21") appeal the denial of their summary judgment motions and the grant of summary judgment in favor of defendant-appellee, National Union Fire Insurance Company ("National Union"). In its ruling, the district court held that insurance policies issued by National Union did not cover certain legal claims asserted against them, and that there was no genuine issue of material fact as to the applicability of two policy exclusions. We affirm. I. I. __ Factual Background and Prior Proceedings Factual Background and Prior Proceedings ________________________________________ To explicate the insurance coverage dispute, we first recount the events underlying the claims against the insured parties, Winnacunnet and SAU #21. In 1991, former Winnacunnet High School students Vance Lattime, Jr., Patrick Randall, and William Flynn pleaded guilty to the murder of Gregory Smart, the husband of the school media director, Pamela Smart ("Smart"). See State ___ _____ v. Smart, 622 A.2d 1197, 1202 (N.H.), cert. denied, 114 S. _____ _____ ______ Ct. 309 (1993). The students eventually testified for the state at the trial of Smart, who was convicted of first degree murder, conspiracy to murder and tampering with a witness. Id. at 1200, 1202. For their roles in the murder, ___ -2- 2 Randall and Flynn are currently serving prison terms of forty-years-to-life, and Lattime is serving thirty-years-to- life (each with twelve years deferred). Cecelia Pierce, a former student intern of Smart's who had known about the murder plan before it was carried out, eventually assisted the authorities in securing information leading to Smart's arrest. Id. at 1201-02. Pierce was not charged with, or ___ convicted of, any crime related to the murder.1 In 1993, Lattime, Randall, Flynn and their parents, Naomi and Vance Lattime, Sr., Patricia and Frank Randall, and Elaine Flynn, filed a lawsuit in New Hampshire state court alleging that Winnacunnet was negligent in hiring and supervising Smart. They claimed that Winnacunnet's negligence resulted in "inappropriate relationships and dangerous effects" and caused Smart to commit various acts that, in turn, led to: injuries including but not limited to emotional distress, mental instability,  ____________________ 1. The facts at trial, see Smart, 622 A.2d at 1200-02, ___ _____ established that Smart became involved sexually with Flynn. During the affair, Smart told Flynn that they would have to kill her husband if their relationship was to continue. They planned the murder in detail, and Smart frequently spoke to Pierce of the plans. Flynn enlisted the help of Randall and Lattime after his first attempt at murdering Gregory Smart failed. On the day of the murder, Flynn, Randall and Lattime (with another boy) drove to Smart's empty residence, and, while Lattime waited in the car, Flynn and Randall ransacked the home to create the appearance of a burglary. When Gregory Smart returned home, Flynn and Randall forced him to his knees, and while Randall held his head down at knife point, Flynn shot him once in the head. -3- 3 physical incarceration, impairment of judgment, thereby causing them to suffer criminal responsibilities, incarceration, irreparable harm through loss of liberty, lost earnings, earning capacity, loss of education by and through [Winnacunnet], financial loss, separation of Students from their parents and family, loss of consortium by the parents, loss of consortium by the Students, etc.; all to the damage of the plaintiffs. In a separate state action, Pierce sued SAU #21, the entity that oversees the operations of Winnacunnet High School,2 alleging that it was negligent in hiring, training and supervising Smart. Pierce claimed that the alleged negligence caused her "loss of education, loss of past, present and future earnings, loss of reputation and standing in the community, and mental anguish."3 Neither writ of summons4 in the underlying state actions specifically mentioned the murder of Gregory Smart.  ____________________ 2. Interestingly, Pierce named only SAU #21 as a defendant while the other students and their parents named only Winnacunnet. Both actions allege, inter alia, negligent _____ ____ hiring/employment although it appears from the record that SAU #21 is the entity that hired Smart. In any case, no party has raised any issue in this regard to us, and because the policies issued to SAU #21 list Winnacunnet as an additional insured, we treat the present coverage question as unaffected by the difference in the underlying named defendants. 3. At oral argument, the parties informed us that Pierce has received $9,000 in settlement of her claim. 4. In New Hampshire, a writ of summons is the initial pleading in a civil action at law. For simplicity, we will refer to this pleading as a "writ." -4- 4 Winnacunnet and SAU #21 (collectively, "the School") turned to National Union to defend and indemnify them in the state actions under consecutive "School Leaders Errors and Omissions" insurance policies, issued for one-year periods beginning November 17, 1990 and 1991. Under the policies, National Union was obligated to defend any action and pay damages resulting from "any Wrongful Act (as herein defined) of the Insured or of any other person for whose actions the Insured is legally responsible." The policies defined "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties." National Union declined coverage, citing the following policy exclusions: This policy does not apply: (a) to any claim involving allegations of fraud, dishonesty or criminal acts or omissions; however, the Insured shall be reimbursed for all amounts which would have been collectible under this policy if such allegations are not subsequently proven; (b) to any claims arising out of (1) false arrest, detention or imprisonment; (2) libel, slander or defamation of character; (3) assault or battery; (4) wrongful entry or eviction, or invasion of any right of privacy; (c) to any claim arising out of bodily injury to, or sickness, disease or death of any person, or damage to or destruction of any property, including the loss of use thereof. -5- 5 Upon National Union's denial of coverage, the School petitioned the New Hampshire Superior Court for Rockingham County for a declaratory judgment ordering National Union to defend and provide coverage in the students' and parents' (the "underlying plaintiffs") lawsuits. National Union removed the action, based on diversity jurisdiction, to the United States District Court for the District of New Hampshire. On cross motions for summary judgment, the district court denied the School's motions and granted National Union's motions, reasoning that policy exclusions (b) and (c) barred coverage because the underlying claims arose out of the assault, battery, bodily injury and death of Gregory Smart. The court did not discuss the applicability of exclusion (a). The School appeals. II. II. ___ Discussion Discussion __________ A. Summary Judgment Standard of Review _______________________________________ We review a grant of summary judgment de novo, __ ____ viewing the facts in the light most favorable to the non- moving party and drawing all reasonable inferences in that party's favor. Barbour v. Dynamics Research Corp., 63 F.3d _______ ________________________ 32, 36 (1st Cir. 1995), cert. denied, 116 S. Ct. 914 (1996). _____ ______ Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there -6- 6 is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, the summary judgment victor, National Union, bore the burden of proving lack of coverage. See N.H. ___ Rev. Stat. Ann. 491:22-a (providing that, in petitions to determine liability insurance coverage, the burden of proof is on the insurer). Where, as here, "the moving party will ______ bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex _______ Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., _____ _______ dissenting on other grounds). In response, the non-moving party must either submit a supportable request for additional discovery time or "produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial," id., and in so doing, that party "may not rest on mere ___ allegations or denials of his pleading." Anderson v. Liberty ________ _______ Lobby, Inc., 477 U.S. 242, 256 (1986). ___________ B. Analysis ____________ The School contends that exclusions (b) and (c), which preclude coverage for "any claims arising out of . . . assault or battery" and "any claim arising out of bodily injury to . . . or death of any person," do not apply because -7- 7 the underlying writs alleged none of these excluded acts. Moreover, the School argues, the assault and death of Gregory Smart need not be shown to prove the negligence claims and thus, they do not "arise out of" those acts. National Union responds that the exclusions apply because the alleged injuries, which constitute a critical element of the negligence actions, are entirely related to the murder of Gregory Smart and its aftermath.5 New Hampshire courts have consistently viewed "arising out of" as a "`very broad, general and comprehensive term . . . meaning originating from or growing out of or flowing from.'" Merrimack Sch. Dist. v. National Sch. Bus _____________________ __________________ Serv., Inc., 661 A.2d 1197, 1199 (N.H. 1995) (reading phrase ___________ broadly in context of indemnity agreement which is itself strictly construed) (quoting Carter v. Bergeron, 160 A.2d ______ ________ 348, 353 (N.H. 1960) (internal alteration omitted) (construing insurance policy)). Indeed, the concept embodied in the phrase "arising out of" appears to be something broader than the concept of proximate causation. See Carter, ___ ______ 160 A.2d at 353 (observing that injuries need not have been "directly and proximately caused by the use of the insured vehicle" to be deemed to "arise out of" that use). Here, if the underlying plaintiffs' negligence claims arise out of any  ____________________ 5. National Union concedes that the policies would have covered the claims but for the exclusions.  -8- 8 of the excluded acts, National Union need not defend or indemnify the School against those claims. While a duty to defend6 may be found solely on the facts pleaded in the cause of action, a court may inquire into the underlying facts "to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." M. __ Mooney Corp. v. United States Fidelity & Guar. Co., 618 A.2d _____________ __________________________________ 793, 796-97 (N.H. 1992); see also Titan Holdings Syndicate, ___ ____ _________________________ Inc. v. City of Keene, 898 F.2d 265, 271 (1st Cir. 1990) ____ ______________ (noting that a court must review the facts alleged in the underlying suit and that "the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant") (discussing New Hampshire law). We find it appropriate in this case to look beyond the conclusory pleadings to determine the applicability of the disputed exclusions. In their depositions, all of the underlying plaintiffs state that the reason they brought the action was their belief that the school was negligent in hiring Smart and in supervising her activities with the students. Thus, not surprisingly, and consistent with their writs, the underlying plaintiffs unanimously conclude that the School's  ____________________ 6. The duty to defend is broader than the duty to indemnify, as an insurer may be obligated to defend a groundless lawsuit that ultimately does not give rise to indemnification. United States Fidelity & Guar. Co. v. Johnson Shoes, 461 A.2d __________________________________ _____________ 85, 87 (N.H. 1983). -9- 9 alleged breach of duty caused their harm. Whether or not that is true, however, does not resolve the dispositive issue in this appeal: whether the underlying plaintiffs' claims "arise out of" the murder of Gregory Smart. An essential element of the negligence claim is the resulting damage. See Trudeau v. Manchester Coal & Ice Co., ___ _______ _________________________ 192 A. 491, 492 (N.H. 1937) (explaining that "actual damage is an essential element" of negligence actions that "[are] brought not to vindicate a right but to recover compensation for negligently inflicted personal injuries"). Thus, where the damages arise entirely out of excluded acts, the whole claim does as well. Cf. All Am. Ins. Co. v. Burns, 971 F.2d ___ ________________ _____ 438, 442 (10th Cir. 1992) (concluding that alleged injuries in otherwise-covered negligence action triggered exclusions); Continental Casualty Co. v. City of Richmond, 763 F.2d 1076, ________________________ ________________ 1081 (9th Cir. 1985) (finding no coverage where the plaintiffs would have no claim for relief against the insured if the alleged misconduct "[had] not manifested itself in the injury"). Here, if the underlying plaintiffs cannot prevail on their negligence claims without showing how the murder of Gregory Smart affected them, then their claims must "arise out of" the excluded acts of assault, battery, bodily injury and death. All of the evidence in the record points to the murder and its aftermath as the source of the injuries. For -10- 10 example, Pierce testified in her deposition that the reason for her "loss of education" was that she missed many days of school because she had to testify at Smart's trial, eventually left Winnacunnet during her junior year, and had trouble getting into college because she was uncomfortable asking Winnacunnet for help with her applications. She stated that her "loss of earnings" resulted from having to quit her job in order to testify and assist in the trial. She attributed her "loss of reputation" to the fact that she was recognizable from her involvement in the trial and complained that she lost friends as a result. Pierce also testified that her mental anguish stemmed from the foregoing and acknowledged that if Gregory Smart had not been murdered, she would not have sued. During Randall's deposition, he asserted, "I'm not suing the school because I'm in jail," but also stated "[i]f I never got caught for killing Greg Smart, I would have never brought a lawsuit." He agreed that his involvement in the murder and subsequent incarceration were the reasons why he (1) lost his liberty and employment opportunities, (2) was unable to finish high school, (3) was separated from his parents and fellow Winnacunnet students, and (4) suffered emotional pain. While he declared, "I still suffered the harm whether I got caught or whether I got away with [the -11- 11 murder]," that assertion does not negate the fact that his injuries derived from his involvement in the murder. Flynn testified that he believed that because of the School's negligence, "something happened that may have been averted," and acknowledged his incarceration is the reason why he suffers from being separated from his parents. Lattime acknowledged that neither he nor his parents would have brought the action if he had not been involved in the murder. The parents' deposition testimony on this issue also reveals that the injuries were related to their children's involvement in the murder. For example, Patricia Randall testified that she brought the lawsuit "[b]ecause what happened to my son I don't want to happen to anybody else" and acknowledged that "what happened" to her son was his incarceration for his involvement in the murder. Frank Randall testified that while he thought Smart should have been properly supervised, he was also suing because his son was incarcerated. Elaine Flynn testified that her reason for bringing the suit was her belief that the School's negligence caused "the situation that occurred." Naomi Lattime stated that "had [the School] followed up or done anything to -12- 12 investigate a faculty/student relationship, . . . possibly this never would have happened or gone as far as it did."7 While the School's alleged negligence in hiring and supervising Smart could have caused the underlying plaintiffs injuries unrelated to the murder, nothing in the record supports the existence of any such injury. The underlying plaintiffs' allocation of blame for their suffering, while indicative of their belief that the School was at fault, does not obviate the fact that the record evidence establishes that all of the alleged damages (e.g., harm from loss of ___ ____ liberty, lost education and earnings, separation of students  ____________________ 7. Further support for the conclusion that the alleged damages flow entirely from the students' involvement in the murder is found in the notice of claim sent to Winnacunnet, which states in part: [Winnacunnet's negligence] directly resulted in the manipulative relationship with Pamela Smart, which ultimately caused the loss of liberty to [the students]. Moreover, their parents lost any rights of parental enjoyment with their sons, including but not limited to loss of parental rights, loss of consortium, etc. [Lattime's parents] were also required to expend exorbitant funds, in excess of $70,000.00, in defense of criminal charges brought against their son. As a result of these damages, the Plaintiff[s] demand maximum amount of monetary damages allowable under the Statutes and/or the policy limits of the insurance of the School insurance policy, whichever is greater. -13- 13 and parents) originate from, or "arise out of," the murder.8 The School has failed to rebut, with evidence sufficient to raise a genuine issue of material fact, National Union's showing that the exclusive source of the underlying plaintiffs' injuries (and, therefore, their claims) was the murder of Gregory Smart and its attendant excluded acts of assault, battery, bodily injury and death. The facts of this case are not unlike those in All ___ Am. Ins. Co. v. Burns, 971 F.2d 438, 440 (10th Cir. 1992), _____________ _____ involving a church bus driver who was convicted of sexually assaulting two children whom he was transporting. The victims sued the church and its board members alleging, inter _____ alia, negligent hiring. Id. The board members turned to ____ ___ their insurer for defense and indemnification, but the court found applicable a policy exclusion for "personal injury arising out of the willful violation of a penal statute." Id. at 441. The court explained that a negligence action ___  ____________________ 8. We note that the district court carefully reviewed the School's motions to reconsider its summary judgment ruling, permitting the parties to supplement their pleadings on the very issue of the source of the claimed injuries. The School failed then to produce evidence establishing any issue of material fact on this question. Finally, at oral argument before this court, counsel for the School stated that Pierce "felt much anguish" on the night of the murder, and thus, she suffered whether or not the murder was committed. This assertion is too little to late. Not only is it unsupported by any record evidence, the purported "anguish" stems from the murder conspiracy and likely falls within exclusion (a) which bars coverage for "any claim involving allegations of . . . criminal acts." -14- 14 depends not only upon a breach of duty, "`but also upon damage or injury suffered by the plaintiff as a consequence of the violation of duty.'" Id. (quoting 57A Am. Jur. 2d ___ Negligence 142, at 202-03 (1989)). Thus, the court found __________ that the general negligence allegations in the complaint did not compel coverage because the claimed injuries undeniably stemmed from the sexual assault. Id. at 442.9 ___ Our resolution of this case is consistent with cases in other jurisdictions, relied upon by the district court, recognizing that an exclusion for a claim arising out of an assault also bars coverage for a claim that an insured negligently allowed an assault to occur. See, e.g., United ___ ____ ______ Nat'l Ins. Co. v. Entertainment Group, Inc., 945 F.2d 210, ______________ __________________________ 213-14 (7th Cir. 1991) (applying Illinois law); Audubon _______ Indem. Co. v. Patel, 811 F. Supp. 264, 265 (S.D. Tex. 1993) __________ _____  ____________________ 9. The School relies on Durham City Bd. of Educ. v. National ________________________ ________ Union Fire Ins. Co., 426 S.E.2d 451, 455 (N.C. Ct. App.), ____________________ review denied, 431 S.E.2d 22 (N.C. 1993), involving identical _____________ exclusions in a similar errors and omissions policy. In that case, a student who allegedly had been raped by a school coach sued the school board for, inter alia, negligent hiring _____ ____ and supervision. Id. at 454. In a brief and conclusory ___ analysis, the court found that the exclusions did not bar the duty to defend because the allegations were for "money damages suffered as a result of . . . negligent supervision" and did not include the rape as a "necessary feature." Id. ___ at 456, 457. We find this perfunctory treatment unpersuasive. Unlike that court, we are not content to decide the coverage issue based solely on the allegations on the face of the writ. Here, the underlying plaintiffs' damages, a "necessary feature" of their negligence claim, have all been shown to be inextricably related to the excluded acts. -15- 15 (applying Texas law); St. Paul Surplus Lines Ins. Co. v. 1401 _______________________________ ____ Dixon's Inc., 582 F. Supp. 865, 867-68 (E.D. Pa. 1984) _____________ (applying Pennsylvania law). These cases held that coverage was barred because the excluded acts, assault and battery, were the immediate cause of the injury giving rise to the action. The School argues that these cases are completely inapposite because (1) unlike those cases, the underlying plaintiffs here are not the ones who suffered the assault and (2) in any event, the writs do not allege a negligent failure to prevent assault. We are not persuaded. The School's first "distinction" runs afoul of exclusion (c), which applies in the case of bodily injury or death of "any person." As to the second, from the evidence pertaining to the alleged damages here, it is as if the underlying plaintiffs, though styling their claims as negligent hiring/supervision, have alleged that the School negligently permitted an assault to occur. Cf. United Nat'l Ins. Co. v. ___ _____________________ The Tunnel, Inc., 988 F.2d 351, 354 (2d Cir. 1993) (denying ________________ coverage where "plaintiff is seeking to recover by `dressing up the substance' of one claim, here a battery, in the `garments' of another, here negligence"). Finally, it would make little sense to bar coverage for an action brought by the estate of Gregory Smart -- the one who suffered the bodily injury and death -- but find coverage for an action by -16- 16 those who actually inflicted the injury and who claim damages relating entirely to that event. III. III. ____ Conclusion Conclusion __________ While undoubtedly there are cases in which a negligent hiring or supervision claim does not seek compensation for damages arising entirely out of excluded acts, this is not one of them.10 For the foregoing reasons, the judgment of the district court is affirmed. affirmed ________ Costs to appellee. Costs to appellee _________________  ____________________ 10. Because we agree with the district court's well-reasoned conclusion that policy exclusions (b) and (c) barred coverage of the claims against the School, we need not reach the issue of the applicability of exclusion (a). -17- 17