**CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. CPG 1239, Plaintiff**

**v.**

**BUNKER HILL VIEW GUEST HOUSE, INC. d/b/a BUNKER HILL HOTEL, Defendant**

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. CPG 1239, Plaintiff**

**v.**

**BUNKER HILL VIEW GUEST HOUSE, INC. d/b/a BUNKER HILL HOTEL, Defendant**

Civil Nos. 2008-26; 2008-27

District Court of the Virgin Islands

Division of St. Thomas and St. John

December 31, 2008

Douglas L. Capdeville, Esq., St. Croix, USVI, *For the plaintiff.*

Desmond L. Maynard, Esq., St. Thomas, USVI, *For the defendant.*

Gómez, *Chief Judge*

## MEMORANDUM OPINION

(December 31, 2008)

Before the Court is the motion of the plaintiff, Certain Underwriters at Lloyd's London Subscribing to Policy No. CPG 1239 ("Lloyd's"), for summary judgment against the defendant, Bunker Hill View Guest House, Inc. d/b/a Bunker Hill Hotel ("Bunker Hill").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lloyd's commenced these consolidated actions[1] in March, 2008 against Bunker Hill for a declaratory judgment. Lloyd's, a commercial insurer, sold Commercial Lines Policy Number CPG1239 (the "Policy") to Bunker Hill. The Policy was effective from March 11, 2006 to March 11, 2007, and provided liability coverage for up to $300,000 per occurrence at a guest house owned by Bunker Hill. Lloyd's alleges that the Policy excludes certain occurrences from coverage.

According to Lloyd's, former guests of Bunker Hill, Daren Stevens ("Stevens") and Caroley Brunn ("Brunn") (together, the "Underlying Plaintiffs"), have separately sued Bunker Hill in the Superior Court of the Virgin Islands (the "Underlying Cases"). The complaints in the

---

[1] These actions were consolidated by order dated May 2, 2008.

Underlying Cases allege that Bunker Hill negligently allowed an individual named Joel Dowdye ("Dowdye") to enter the guest house. After entering the guest house, Dowdye allegedly shot and killed an individual named Sherett James ("James"). Dowdye also allegedly shot and injured Stevens. Lloyd's claims that Stevens is suing Bunker Hill for his injuries. Lloyd's also claims that Brunn has sued on behalf of James' estate.

Lloyd's alleges that Bunker Hill has demanded that Lloyd's defend it in the Underlying Cases. As a consequence, Lloyd's seeks a declaration from this Court that the Policy excludes coverage for the Underlying Cases.

Lloyd's now moves for summary judgment in these actions. Bunker Hill has filed an opposition[2] and Lloyd's a reply.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague

---

[2] Local Rule of Civil Procedure 56.1(b) provides, in relevant part:

Any party adverse to a motion filed under this rule may file a response, brief, affidavits and other supporting documents within twenty (20) days of the filing of the motion. The respondent must address the facts upon which the movant has relied pursuant to subsection (a)(1), using the corresponding serial numbering and either (I) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.

LRCi 56.1(b) (2008).

Here, Bunker Hill's opposition violates Local Rule 56.1(b) to the extent it fails both to use the corresponding serial numbering Lloyd's uses in its motion and to state whether the facts Lloyd's puts forward are disputed or undisputed.

statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850, 122 S. Ct. 2559, 153 L. Ed. 2d 735 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## B. Standards for the Interpretation of Insurance Contracts

■ "The interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law." *Coakley Bay Condominium Ass'n v. Continental Ins. Co.*, 26 V.I. 348, 770 F. Supp. 1046, 1050 (D.V.I. 1991) (citing *Berne v. Aetna Insurance Co.*, 21 V.I. 342, 604 F. Supp. 958 (D.V.I.) *aff'd*, 782 F.2d 1026 (3d Cir. 1985)). Courts interpreting insurance policies should read the provisions within the context of the entire policy and any extensions attached thereto. *Id.* at 1051; V.I. CODE ANN. tit. 22, § 846 (2004).[3] Furthermore, courts "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) (quoting *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)).

■ If the terms of a policy are unambiguous, it must be construed according to its plain language. Indeed, the "understanding of an ordinary person is the standard to be used in construing the insurance policy." *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992). If any ambiguity exists, however, it must be construed against the insurer, and in

---

[3] Title 22, Section 846 of the Virgin Islands Code provides:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy.

V.I. CODE ANN. tit. 22, § 846.

a manner which is more favorable to coverage. *Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.*, 707 F.2d 775, 778 (3d Cir. 1983); *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992).

## III. ANALYSIS

To meet its initial burden in this motion, Lloyd's argues that the Policy's exclusion precludes coverage for the claims asserted in the Underlying Cases.[4] The exclusion upon which Lloyd's relies provides, in pertinent part:

> This insurance does not apply to:
> 1. An assault and/or battery regardless of culpability or intent;
> 2. A physical altercation; or
> 3. Any act or failure to act to prevent or suppress such assault and/or battery or physical altercation;
>
> Whether caused by the insured, an employee, a patron, or any other person; and whether or not the acts occurred at the premises owned or occupied by the insured.
>
> This exclusion also applies to any:
> 1. Damages arising from a claim by any other person, firm or organization, asserting rights derived from, or contingent upon, any person asserting a claim arising out of an assault and/or battery or a physical altercation;
> 2. Damages for emotional distress, or for loss of society, services, consortium and/or income; reimbursement for expenses (including but not limited to medical expenses, hospital expenses, and wages) paid or incurred by such other person, firm or organization;
> 3. Obligation to share damages with or repay someone who must pay damages because of such assault and/or battery or physical altercation; or

---

[4] Lloyd's also seeks to meet its burden by arguing that the allegations of the complaints in the Underlying Cases do not state that there has been an "occurrence," as that term is defined by the Policy. Because the Court finds, for the reasons discussed below, that Lloyd's prevails for other reasons, the Court need not reach this argument.

4. Damages arising out of allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such assault and/or battery or physical altercation.

We are under no duty to defend an insured in any "suit" alleging such damages arising out of an assault and/or battery or physical altercation.

(Pl.'s Mem. in Supp. of Mot. for Summ. J., Exh. 1 at 2.)

The exclusion in this matter clearly and unambiguously bars coverage for any claim arising out of any act, error, or omission of Bunker Hill relating to any assault and/or battery, whether perpetrated by Bunker Hill or a third party. To determine whether that exclusion applies to Bunker Hill's demand, the Court must examine the factual allegations in the Underlying Cases. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Pipher,* 140 F.3d 222, 224 (3d Cir. 1998) (holding that it is the factual allegations averred in the complaint, and not the nature of the act that caused the injury, that control in determining whether an exclusion applies); *Mechetti v. Illinois Ins. Exchange/Classic Syndicate,* Civ. No. 97-5855, 1998 U.S. Dist. LEXIS 4035, at *10 n.8 (E.D. Pa. Mar. 30, 1998); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.,* 582 F. Supp. 865, 867 (E.D. Pa. 1984).

The factual allegations in both of the Underlying Cases are essentially identical. The complaints in both cases allege that Bunker Hill was negligent in: allowing Dowdye into the guest house, telling him the room in which the Underlying Plaintiffs could be found and failing to warn the Underlying Plaintiffs that Dowdye was on the premises. The complaints also allege that Dowdye shot both of the Underlying Plaintiffs, injuring one and killing the other.

Essentially, the Underlying Plaintiffs allege that Bunker Hill's act or failure to act and/or omission led to an assault and battery that caused their injuries. The Policy's exclusion, however, unambiguously precludes coverage for "[a]ny act or failure to act to prevent [an] assault and/or battery," and applies to "to any act, error, or omission relating to such assault and/or battery . . . ." (Pl.'s Mem. in Supp. of Mot. for Summ. J., Exh. 1 at 2.)

No Virgin Islands case law contemplates an assault and battery exclusion to determine whether an insurance policy excludes coverage for

an insured's negligent act or omission that results in an assault and battery. However, several cases in other jurisdictions, including from within the Third Circuit, have interpreted exclusions similar to the one in this matter to preclude coverage for negligence claims where the injury is the result of an assault and/or battery.

For example, in *United Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210 (7th Cir. 1991), a female teenager attended a movie at a theater, where she was sexually assaulted by a third party. The teenager sued the theater owner in state court, alleging various negligence theories. The theater owner's insurance policy excluded coverage for "[c]laims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the Insured, and/or his employees." *Id.* at 212. The district court granted the motion for summary judgment of the theater owner's insurer, rejecting the theater owner's argument that the insurer was obligated to provide coverage because the underlying suit was a negligence suit, not a suit claiming assault and battery. In affirming the district court's ruling, the Seventh Circuit found unpersuasive the theater owner's contention that "the assault and battery exclusion applies only when a suit explicitly states a cause of action for assault and battery." *Id.* Specifically, the court reasoned that the underlying plaintiff's

> injuries originated in, or arose from, an assault and rape. The exclusion in the insurance policy precludes coverage for suits "arising out of assault and/or battery." The assault and battery endorsement denies coverage, *inter alia,* if the injury is caused by an "omission" of the insured or his employees. Hence, the policy excludes coverage even when the injured party alleges that the assault was the result of the insured's negligence.

*Id.* at 214; *see also St. Paul Surplus Lines Ins. Co.*, 582 F. Supp. at 867 (barring coverage for a tavern sued for negligence by the mother of a customer who was killed in the tavern's parking lot, because the assault and battery resulting in the customer's death was the immediate cause of the injury that gave rise to the lawsuit).

The Seventh Circuit's conclusion in *Entertainment Group* finds ample support in other federal appellate cases. For instance, in *Winnacunnet Co-op. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 84 F.3d

32 (1st Cir. 1996) (applying New Hampshire law), a school filed an action to obtain coverage from its insurer for claims by parents alleging negligent supervision and hiring of a teacher who had conspired with students to have her husband murdered. The First Circuit was unconvinced by the school's contention that the policy's assault and battery exclusions did not apply because the claims did not "arise out of" the violence.[5] The court reasoned that the phrase "arising out of" was sufficiently broad to include not only causation but also damages "originating from," "growing out of" or "flowing from" the alleged intentional act. *Id.* The court homed in on the nature of the alleged damages, concluding "that *all* of the alleged damages ... originated from, or 'arose out of,' the murder." *Id.* at 37 (emphasis in original; footnote omitted). The court thus held that the negligent hiring and supervision claims arose "entirely out of excluded acts" of violence and therefore fell outside the bounds of coverage. *See id.* at 38. The First Circuit further noted that its ruling was "consistent with cases in other jurisdictions ... recognizing that an exclusion for a claim arising out of an assault also bars coverage for a claim that an insured negligently allowed an assault to occur." *Id.* (citations omitted).

Similarly, in *Essex Ins. Co. v. Michigan Skatelands*, Nos. 93-2132, 93-2145, 1994 U.S. App. LEXIS 30776, at *7-8 (6th Cir. Oct. 21, 1994) (unpublished; applying Michigan law), two individuals entered a skating rink with firearms and assaulted several patrons. The skating rink owner's insurance policy provided:

> It is agreed this policy does not cover any claims arising out of Assault and Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the Insured, Insured's employees, patrons or any other person.

*Id.* at *2. The Sixth Circuit found that the exclusion "expressly and unambiguously denies coverage for any claim arising out of an assault and battery, and acts or omissions in connection with the prevention or suppression of an assault and battery." *Id.* at *7. The court further noted that "[t]hough [the

---

[5] The exclusion provided, in pertinent part, that the policy "does not apply . . . to any claims arising out of . . . assault or battery." *Winnacunnet Coop. Sch. Dist.*, 84 F.3d at 34.

skating rink owner] characterizes the three underlying claims against it as breach of contract and negligence claims, the underlying claims clearly arose out of tortious conduct." *Id.* Accordingly, the court denied coverage.

██ Here, the Underlying Cases do not state a cause of action for negligence distinct from the assault and battery on the Underlying Plaintiffs. Indeed, the parties do not dispute that all of the injuries alleged by the Underlying Plaintiffs originate in or flow from Dowdye's attack. In other words, but for Dowdye's alleged assault and battery, the Underlying Plaintiffs would have no claims for negligence to assert. Because the Underlying Plaintiffs cannot prevail on their negligence claims without establishing that they were injured from the assault and battery, those claims "arise out of" excluded acts or omissions.

Because the Court finds that Lloyd's has met its initial burden of showing the absence of any genuine issue of material fact, the burden shifts to Bunker Hill to come forward with evidence showing the existence of a genuine issue of material fact.

██ Bunker Hill argues that the authority on which Lloyd's relies is inapposite. Bunker Hill asserts that the underlying suits in those cases allege that the insured was negligent in preventing the assault and battery. According to Bunker Hill, no such allegation exists in the Underlying Cases. In essence, Bunker Hill invites the Court to find that the exclusion does not apply simply because the Underlying Plaintiffs did not draft their complaints to state explicitly that Bunker Hill negligently failed to prevent the assault. Because the Court has already found, however, that the expansive language of the Policy's exclusion does apply even to negligence arising out of an assault and battery by a third party, the Court must decline that legally untenable invitation. *See, e.g., Winnacunnet Coop. Sch. Dist.*, 84 F.3d at 35-36 ("While a duty to defend may be found solely on the facts pleaded in the cause of action, a court may inquire into the underlying facts to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract.") (internal quotation marks and citations omitted); *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) (denying coverage where the "plaintiff is seeking to recover by 'dressing up the substance' of one claim, here a battery, in the 'garments' of another, here negligence"); *see also Essex Ins. Co.*, 1994 U.S. App. LEXIS 30776, at *7-8 (affirming a grant of summary judgment because "[i]t is necessary to focus on the basis for the injury and not the nomenclature of the

underlying claim in order to determine whether coverage exists") (citation omitted).

Bunker Hill also contends that the Policy's exclusion does not apply because "[a]llegations such as negligent supervision or negligently providing information to Dowdye are 'conceptually independent' from negligence in failing to prevent or suppress an attack." (Def.'s Mem. in Opp'n to Mot. for Summ. J. 13.) Bunker Hill seeks support for that contention in an unpublished decision in Kentucky, *Kentucky School Boards Ins. Trust v. Board of Educ. of Woodford County*, No. 2002-CA-001748-MR, 2003 WL 22520018, at *3 (Ky. Ct. App. Nov. 7, 2003). The exclusion in *Kentucky School Boards* barred coverage for damages "related to or arising out of . . . [a]ny claim based upon or arising out of . . . assault and battery." The court found that language ambiguous. This Court, in contrast, perceives no ambiguity in the Policy's provision clearly barring coverage for damages arising out of "any act, error, or omission relating to [any] assault and/or battery." Bunker Hill's reliance on *Kentucky School Boards* is therefore misplaced.

Furthermore, in quoting the exclusion's reference to "negligence in failing to prevent or suppress an attack," Bunker Hill appears to focus exclusively on one subsection of the exclusion at the expense of other provisions. That approach is fatally flawed to the extent it ignores very broad language in the exclusion that clearly bars coverage for all of the Underlying Plaintiffs' negligence claims. *See Jacobs Constructors, Inc. v. NPS Energy Servs.*, 264 F.3d 365, 375 (3d Cir. 2001) (stating that "an insurance policy must be read as a whole . . . .") (citations omitted).

## IV. CONCLUSION

For the reasons given above, the Court finds that there are no material facts in dispute and that Lloyd's is entitled to judgment as a matter of law. Accordingly, the Court will grant the motion. An appropriate judgment follows.